UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | |
|---|---|
| DEBBIE ADAIR, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Case No. 3:19-cv-54 |
| v. ) | |
| ) | Judge Mattice |
| BLUEGREEN VACATIONS ) | Magistrate Judge Poplin |
| UNLIMITED, INC., *et al.*, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

## ORDER

Before the Court is Plaintiffs' Motion to Remand, [Doc. 16], Defendant BPS Direct, LLC's Motion to Dismiss, [Doc. 28], and Defendant Bluegreen Vacations Unlimited, Inc.'s Motion to Dismiss, [Doc. 30]. For the reasons set forth herein, the Motion to Remand will be **GRANTED in part** and **DENIED in part**. Specifically, remand will be granted but costs and fees will be denied. The Motions to Dismiss will be **DENIED AS MOOT**.

### I. BACKGROUND

Plaintiffs are thirty-five displeased customers of Bluegreen Vacations Unlimited, Inc. ("Bluegreen"), a seller of timeshare interests. [*See* Doc. 1-1]. They sued Bluegreen in Sevier County Chancery Court on January 7, 2019, alleging various state law claims relating to timeshare purchases. [Doc. 1]. Plaintiffs also sued BPS Direct, LLC ("BPS Direct"), alleging that Bluegreen timeshares were sold in its "Bass Pro Shop" stores with the help of BPS Direct agents. [*Id.*] On February 5, 2019, Plaintiffs served an Amended Complaint on Defendants, and on February 13, 2019, Defendants removed to this Court. [*Id.*] The factual allegations are lengthy, and will be taken up only as appropriate below.

The Notice of Removal asserts that this Court has jurisdiction because "Plaintiffs and Defendants are citizens of different states, with the exception of BPS Direct whose

-1-

citizenship should be disregarded because it was fraudulently joined to defeat diversity," the diversity jurisdiction amount-in-controversy is met, and none of the defendants are citizens of the state in which Plaintiffs sued. [*Id.*] The Notice of Removal argues that BPS Direct was fraudulently joined because either 1) the claims against BPS Direct are not "colorable" under Tennessee law, or 2) the Court lacks personal jurisdiction over BPS Direct, meaning it should be dismissed[1] while Bluegreen and Plaintiffs (who are completely diverse) remain. [*Id.*]

Plaintiffs have moved to remand to state court, arguing that the Court lacks subject-matter jurisdiction because BPS Direct is non-diverse and non-fraudulently joined. [Doc. 16]. BPS Direct and Bluegreen respond with the same arguments outlined in the Notice of Removal, asserting that BPS Direct was fraudulently joined because either 1) the Court lacks personal jurisdiction over it, or 2) Plaintiffs have not made out a colorable state law claim against it. [Doc. 25]. The Court takes those arguments in turn.

## II. STANDARD OF REVIEW

Removal is permitted under 28 U.S.C. § 1441(a) only when "the district courts of the United States have original jurisdiction" over the case. The removal statute "is to be strictly construed" because it necessarily encroaches on the domain of state courts. *State ex rel. Slatery v. Tenn. Valley Auth.*, 311 F. Supp. 3d 896, 901 (M.D. Tenn. 2018); *cf. Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (observing that the policy underlying removal calls for "strict construction" as a matter of comity and Constitutional fidelity). Thus, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

---

[1] Indeed, BPS Direct has separately filed a Motion to Dismiss on personal jurisdiction grounds.

Removal premised on diversity jurisdiction requires "complete diversity ... at the time of removal" such that each party's citizenship differs from that of every opposite party. *Id.* at 492; *accord Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267 (1806). The "party seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction." *Coyne*, 183 F.3d at 493 (quotation omitted).

Where a non-diverse party is a defendant, "the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012). "Fraudulent joinder is 'a judicially created doctrine that provides an exception'" to the complete diversity requirement where "it is 'clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law'" against the non-diverse defendant. *Id.* at 432-33 (quoting *Coyne*, 183 F.3d at 493, and *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994), respectively). The "relevant inquiry is whether there is 'a colorable basis for predicting that a plaintiff may recover against'" the non-diverse defendant. *Id.* at 443 (quoting *Coyne*, 183 F.3d 493).

Fraudulent joinder analysis is "similar to, but more lenient [on the plaintiff] than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Id.*; *see also Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 487, 488 (6th Cir. 2013) (explaining that a "defendant attempting to prove fraudulent joinder ... faces a particularly heavy burden" and citing *Casias* and out-of-circuit precedent to suggest that the burden is higher than for a Rule 12(b)(6) motion to dismiss). Even so, it differs from a Rule 12(b)(6) analysis in that the Court may "'pierce the pleading' and consider summary judgment evidence, such as affidavits ... for the limited purpose of determining

-3-

whether there are 'undisputed facts that negate the claim.'" *Casias*, 695 F.3d at 428 (quoting *Walker v. Phillip Morris USA, Inc.*, 443 F. App'x 946, 952-54 (6th Cir. 2011)).

## III. ANALYSIS

Defendants concede non-diversity as to BPS Direct[2] but insist in their Notice of Removal, [Doc. 1], and Response to Plaintiffs' Motion to Remand, [Doc. 25], that BPS Direct is fraudulently joined. Thus, the argument goes, BPS Direct should not be considered for purposes of diversity and remand should be denied. They assert two bases for fraudulent joinder: 1) the Court lacks personal jurisdiction over BPS Direct, meaning it cannot be a party and should not be considered, and 2) Plaintiffs' substantive state law claims against BPS Direct are not "colorable" because they are insufficiently pled. Mindful that Defendants bear the heavy burden of showing fraudulent joinder, the Court takes each argument in turn.

### A. Personal Jurisdiction

Defendants exert considerable effort briefing personal jurisdiction itself, but nowhere explain whether personal jurisdiction is an appropriate component of fraudulent joinder analysis. Courts have reached differing conclusions on the matter, and the Sixth Circuit Court of Appeals has not settled the question.

On its face, denying personal jurisdiction seems like a sound basis for asserting fraudulent joinder. After all, federal courts "ordinarily follow state law in determining the bounds of their jurisdiction over persons," *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014), meaning the Court is familiar with Tennessee's long-arm statute, which sweeps as

---

[2] Defendants concede that BPS Direct is a citizen of Missouri, [Doc. 25, at 4] ("BPS Direct [is] a citizen of the State of Missouri"), and that two plaintiffs—Justine Smalley and Elliot Smalley—are also citizens of Missouri. [*Id.*]

-4-

far as "any basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-225; *see also State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 740-41 (Tenn. 2013) (explaining that, in this context, "due process protections in the Constitution of Tennessee [are] co-extensive with those of the United States Constitution"). Under Defendants' view, then, this Court should conclude that Plaintiffs cannot recover against BPS Direct in state court for want of personal jurisdiction,[3] and that BPS Direct should therefore be disregarded for purposes of diversity.

The problem with Defendants' view is that many courts have declined to analyze personal jurisdiction in the fraudulent joinder context. *See, e.g.*, *Edmonson v. Pfizer, Inc.*, No. 4:16-CV-1944, 2017 WL 492829, at *4 (E.D. Mo. Feb. 7, 2017) (citing seven cases in support of the proposition that "[c]ourts in this district have repeatedly held than an alleged lack of personal jurisdiction does not establish fraudulent joinder"); *Liljeberg v. Continental Tire The Americas, LLC*, No. 2:11-CV-510, 2012 WL 602306, at *5 (M.D. Ala. Feb. 24, 2012) (remanding "for lack of subject-matter jurisdiction" where defendants asserted lack of personal jurisdiction as a basis for fraudulent joinder and "leav[ing] to the learned state court the question of personal jurisdiction"); *Thomson v. Cottrell, Inc.*, No. 10-124, 2010 WL 850183, at *3 (S.D. Ill. Mar. 8, 2010) (remanding for want to subject-matter jurisdiction because "a lack of personal jurisdiction does not go to the merits of [the plaintiffs'] claim against [defendant] and thus does not show that they cannot establish a cause of action against the non-diverse [d]efendant" as required for fraudulent joinder); *but see Ross Bros. Const. Co. v. Sparkman*, No. Civ.A. 3:06-0116,

---

[3] The Court takes no position on whether it actually has personal jurisdiction over BPS Direct.

-5-

2006 WL 1519362, at *4 (S.D.W.V. May 25, 2006) (determining that the "question [of personal jurisdiction] may be close" but that defendants had "not shown that there [was] no possibility that the state may exercise personal jurisdiction" over the defendant, meaning remand was warranted). In light of the numerous decisions on this issue, it is concerning that neither side briefed the question.

Even so, the Court is persuaded by the reasoning of decisions which rejected personal jurisdiction as a potential foundation for fraudulent joinder. The latchkey of fraudulent joinder is a showing that there is no colorable claim against the non-diverse defendant. But whether the state court would have personal *jurisdiction* to adjudicate the claim does not bear on whether the *claim itself* is colorable. Indeed, in conducting fraudulent joinder analysis, the Sixth Circuit focuses on the merits of the state law claim, not whether a waivable defect like that of personal jurisdiction might bar the state court from hearing the claim in the first place. *See, e.g.*, *Casias*, 695 F.3d at 433-34 (analyzing substantive Michigan law when assessing fraudulent joinder). The Court declines to journey so far afield when the Sixth Circuit standard aims squarely at the merits of the substantive state law claim.

More troubling yet, assessing personal jurisdiction in this context may shift the burden of proof in a way that perverts the fraudulent joinder analysis. Ordinarily, establishing personal jurisdiction rests with the plaintiff. *See, e.g.*, *Hagen v. U-Haul Co. of Tenn.*, 613 F. Supp. 2d 986, 1001 (W.D. Tenn. 2009) ("The burden of establishing the existence of personal jurisdiction lies with the party asserting such jurisdiction, i.e. the plaintiff." (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). Establishing fraudulent joinder, on the other hand, rests with the defendant; as discussed in Part II, *supra*, the Sixth Circuit is crystal clear on this front. Shoehorning a

personal jurisdiction attack into the fraudulent joinder analysis, however, may functionally require the plaintiff to show why it should not be in federal court, rather than requiring the defendant to show why it should not be in state court. The Court declines to take a firm position on whether Defendants' view does actually distort the appropriate allocation of burden, but notes that Plaintiffs will indeed have to establish personal jurisdiction at some juncture, just not at this one.

The Court therefore declines to analyze personal jurisdiction in this context. Moreover, BPS Direct cannot show that none of the substantive claims are colorable, as will be discussed *infra*, meaning subject-matter jurisdiction is lacking. Thus, the question of its own personal jurisdiction will be left to the learned state court. *See Liljeberg*, No. 2:11-CV-510, 2012 WL 602306, at *5.

### B. Substantive State Law Claims

Defendants argue that the Court should limit its fraudulent joinder analysis to the operative pleading at the time of removal (the Amended Complaint, [Doc. 1-2]), and that the Amended Complaint fails to state *any* colorable claim against BPS Direct.[4] The Amended Complaint asserts claims against BPS Direct under the Tennessee Consumer Protection Act, [Doc. 1-2, ¶¶ 51-54], for misrepresentation by omission relating to timeshare sales presentations and to the timeshares themselves, [*id.* ¶¶ 99-108], and for entering a civil conspiracy with Bluegreen, [*id.* ¶¶ 134-41]. For purposes of judicial efficiency, the Court will focus on the misrepresentation by omission claims.

---

[4] Without taking a position on whether it could consider post-removal amendments to the pleadings, the Court will so limit its analysis because resolution of the fraudulent joinder argument does not turn on facts pled after removal but not before. Although it is true that post-removal amendments to pleadings cannot divest a federal court of jurisdiction, the Court can find no authority (and the Parties have cited none) regarding whether "piercing the pleadings" for fraudulent joinder extends to consideration of post-removal amendments of pleadings.

The crux of Defendants' argument as to misrepresentation by omission (as pled at the time of removal), at least in the Notice of Removal, is that Plaintiffs failed to plead their claims in accordance with Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." [Doc. 1 ¶ 15]. But Defendants nowhere explain why the *Federal* Rules of Civil Procedures bear on whether these claims are colorable in state court, which is the core of fraudulent joinder analysis. Indeed, "it does not appear that the Sixth Circuit has explicitly stated whether district courts assessing fraudulent joinder should consider … the pleading standard applicable in state court rather than the federal pleading standard (if they differ)." *Jackson v. Cooper Tire & Rubber Co.*, 57 F. Supp. 3d 863, 868 (M.D. Tenn. 2014). One scholar has noted that "there is a split among the district courts within the Sixth Circuit as to whether state or federal law applies when testing the sufficiency of the pleadings on a fraudulent joinder inquiry." Charles W. Oldfield, *Fraudulent Joinder, Federalism, and the* Twombly/Iqbal *Problem*, KY. L.J., at *14 (forthcoming 2019) (quotation omitted). Only two courts of appeals have addressed the question: the "Eleventh Circuit held that the state pleading standard applies" while the "Fifth Circuit held that federal district courts must apply the [federal] standard." *Id.*

District courts in Tennessee have applied the state pleading standard for purposes of fraudulent joinder. For example, in the Eastern District of Tennessee, Judge Collier has explained that a federal court should "consider[] the complaint under the state pleading standard." *Smith v. Baker Concrete Const., Inc.*, No. 1:13-cv-207, 2014 WL 3715125, at *4 (E.D. Tenn. Mar. 28, 2014). In the Western District of Tennessee, the court has applied a choice of law analysis, balanced state and federal concerns, and concluded that a state pleading standard should apply. *See In re Regions Morgan Keegan Securities,*
-8-

*Derivative, and ERISA Litigation*, Nos. 2:09-md-2009, 2:10-cv-02260, 2013 WL 2404063, at *8-*12 (W.D. Tenn. May 21, 2013).

The Court agrees that the state pleading standard should apply for purposes of fraudulent joinder analysis. As a Middle District of Tennessee case has noted, "a Plaintiff in Tennessee court might typically engage in 'notice pleading' under the assumption that the Tennessee court would permit the claims to proceed past the pleading stage" because the Tennessee Supreme Court has rejected the enhanced pleading required in federal court under *Twombly* and *Iqbal*.[5] *Jackson*, 57 F. Supp. 3d at 869. This creates a "perverse incentive[]" for non-diverse defendants to "systematically remove otherwise colorable Tennessee claims" by alleging fraudulent joinder in order to win dismissal under the federal plausibility standard. *Id.* This effectively commandeers state pleading by requiring pleading that satisfies the federal standard against non-diverse defendants, lest a federal court should later dismiss as "fraudulent" a claim that is colorable under the state pleading standard. For this reason, the state (not the federal) pleading standard simply must apply.[6]

Somewhat shockingly, neither Defendants nor Plaintiffs briefed this question. Indeed, Defendants' response to the Motion to Remand *does not even cite a pleading standard* for Plaintiffs' concealment claims despite asserting that the claims at the time

---

[5] *See Webb v. Nashville Area Habitat for Humanity*, 346 S.W.3d 422, 430-37 (Tenn. 2011) (discussing at length the *Twombly/Iqbal* framework and ultimately declining "to require a pleader to demonstrate 'plausibility'" as those decisions now require in federal court).

[6] The *Jackson* court ultimately declined to apply any pleading standard at all, instead arguing that the fraudulent joinder analysis asks only whether there is a *chance* that the plaintiff might recover, not whether the claims are sufficiently pled. This reasoning is not without merit, but because many other district courts in the Sixth Circuit *have* applied one pleading standard or the other (rather than taking the *Jackson* approach), the Court finds it appropriate to follow the weight of the case law and pick a standard. Even so, the Court suspects that the disposition of this case would be the same under the *Jackson* approach.

-9-

of removal were insufficiently pled. [*See* Doc. 25 II.A]. Mere reference to a "heightened" pleading standard for these fraud-based claims" is meaningless because both Tennessee fraud pleading and federal fraud pleading are subject to a "heightened" standard, but apparently not the same one.[7] The Notice of Removal cites Federal Rule of Civil Procedure 9(b) as the relevant pleading standard, [Doc. 1 ¶ 15], but also nowhere explains why a federal pleading standard should govern. To be fair, Defendants perhaps could not have predicted how the Court would rule on the appropriate pleading standard. But the case law from district courts in Tennessee, the Sixth Circuit, and across the country (not to mention two federal courts of appeals) should have alerted them to the issue, and they should have addressed it. After all, Defendants alone bear the heavy burden of establishing fraudulent joinder. The Court will not reward their failure to even discuss which pleading standard should apply by making out their argument under Tennessee pleading law for them. Decision on that issue will be left to the learned state court.

## IV. COSTS AND FEES

Plaintiffs cite a 1993 Sixth Circuit case for the proposition that the Court has discretion to award costs and fees when granting remand. *See Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993). Since then, however, the

---

[7] Tennessee Rule of Civil Procedure 9.02 provides a heightened pleading standard for fraud, much like Federal Rule of Civil Procedure 9(b) provides a heightened pleading standard for fraud. But the two provisions are worded somewhat differently, and a plain reading of the text does not reveal whether the differences are merely cosmetic. The Tennessee Court of Appeals, however, has indicated that the particularity requirement of Rule 9.02 is influenced by Tennessee's otherwise liberal notice pleading standard, which certainly cannot be said of Federal Rule 9(b). *See Eledge v. Eledge,* No. M2015-01055-COA-R3-CV, 2016 WL 3178537, at *6 (Tenn. Ct. App. May 26, 2016) (citing *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275-76 (Tenn. Ct. App. 1999) for the proposition that "[d]espite Rule 9.02's particularity requirements, we must determine the sufficiency of the [fraud-based] claims in light of Tenn. R. Civ. P. 8.01's liberal pleading standards"). Thus, it seems likely that fraud pleadings in Tennessee court are analyzed under a more liberal standard than fraud pleadings in federal court, much as with standard pleading.

-10-

Supreme Court has explained that such an award is appropriate "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Plaintiffs did not explain why Defendants' removal was objectively unreasonable, and while the Court ultimately ruled against Defendants, it cannot be said that this assertion of fraudulent joinder was objectively unreasonable even if predicated on certain assumptions that Defendants should have supported. Accordingly, while remand will be granted, costs and fees will be **DENIED**.

## V.     CONCLUSION

The Court lacks jurisdiction over this case. The Motion to Remand, [Doc. 16], is hereby **GRANTED** and the matter is **REMANDED** to the Circuit Court for Sevier County, Tennessee. See 11 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Plaintiffs' request costs and fees is **DENIED**, while Defendants' Motions to Dismiss, [Doc. 28; Doc. 30], are **DENIED AS MOOT**.

The Clerk is hereby directed to transfer the file to the Circuit Court Clerk for Sevier County, Tennessee.

**SO ORDERED** this 25th day of October, 2019.

> */s/ Harry S. Mattice, Jr.*
> HARRY S. MATTICE, JR.
> UNITED STATES DISTRICT JUDGE